[Civ. No. 10536. First Appellate District, Division One.—September 27, 1937.]

RAY CHAVOYA, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Silas W. Mack and John Milton Thompson for Petitioner.

Everett A. Corten and Arthur I. Townsend for Respondents.

KNIGHT, J.—This proceeding in *certiorari* was instituted for the purpose of having reviewed and annulled an award of the Industrial Accident Commission.

There is no dispute as to the facts. It appears therefrom that petitioner was injured on the night of June 29, 1935, while operating a portable electric motor mounted on an old fire truck belonging to the city of Monterey, and used by the city as part of its fire department equipment to generate electric energy for floodlights. At the time of the accident petitioner was, and for nearly twenty-five years prior thereto he had been, a member of the Monterey volunteer fire department; and since 1930 he had been employed part time by the city as electrician, at a salary of $100 a month, to keep the city's fire alarm system in working order. In support of his claim for compensation he contended that when injured he was serving the city as a volunteer fireman, and that therefore he was entitled to the amount of compensation fixed by section 8 (g) of the Workmen's Compensation Act. That section provides that "Each male member registered as an active fire fighting member of any regularly organized volunteer fire department, having official recognition, and full or partial support of the government of the city, town, or district, in which such volunteer fire department is located, shall be held and deemed to be an employee of such city, city and county, town or district for the purposes of this act, and shall be entitled to receive compensation from such city, town or district in accordance with the provisions thereof." It then goes on to declare that irrespective of the amount of remuneration received by the volunteer fireman as such, and from other sources of employment, his compensation for injuries shall be computed on the basis of weekly wages of

$38.46. The referee before whom the hearing was held found as claimed by petitioner that his case fell within the scope of said section, and fixed his compensation accordingly, at $25 a week. The commission adopted the referee's decision and entered an award in conformity therewith. Thereupon the insurance carrier, State Compensation Insurance Fund, petitioned for a rehearing, and the merits of its petition were assigned for consideration and recommendation to another referee. He held in effect, contrary to the decision of the first referee and from the same evidence, that the provisions of the volunteer fireman section of the Workmen's Compensation Act were not available to petitioner, and thus his compensation should be fixed on the basis of the monthly wage of $100 petitioner was receiving as maintenance man of the fire alarm system. Said referee recommended, therefore, that a rehearing be granted and that the award be reduced to the lesser sum of $14.25 a week. Adopting the recommendation of the referee, the commission granted a rehearing, and without taking any additional evidence ordered the case resubmitted, reversed its previous award, and entered a new one in conformity with the recommendations of the second referee. Petitioner then applied for a rehearing, and upon the denial thereof instituted this proceeding in *certiorari* to annul the second award.

We are of the opinion that under the admitted facts no legal ground appears upon which petitioner may be denied the benefits afforded by the provisions of said section 8 (g) of said act. As stated, the accident occurred on June 29, 1935. At that time the fire department consisted of a fire chief, two truck drivers, and a volunteer department having thirty-two members, one of whom was petitioner. The fire chief and the truck drivers were paid regular monthly salaries, and the volunteer firemen received a dollar an hour for services actually rendered. Petitioner had been a member of the volunteer department since 1911, and his employment part time by the city as maintenance man of the fire alarm system began in 1930. His duties as such maintenance man required no regular hours, and he devoted his spare time to private enterprises, among them being radio repair work and playing in a local orchestra. His appointment as maintenance man of the fire alarm system, however, did not in any manner affect his status as an active member in good standing of the volunteer fire department, and he continued there-

after, as before, to perform all of the duties thereof. Part of his assignment as such volunteer fireman had been and thereafter was to take charge of and operate the floodlight truck whenever its use was necessary. If, however, his services as a volunteer fireman were not available at the time, the truck was driven and operated by some other volunteer fireman. Furthermore, having had much past experience as an electric lineman, he was called upon at times, when serving as a volunteer fireman at a fire, to cut or otherwise take care of live wires. For approximately two years following his appointment as maintenance man of the fire alarm system, he continued to receive in addition to his monthly salary of $100 the same remuneration paid to other volunteer firemen; but it is conceded that the discontinuance of such remuneration at the end of that time in no way altered his standing as an active volunteer fireman. In fact the second referee in his report to the commission expressly states: ''Applicant was in truth a 'volunteer fireman', though the emoluments attached to the 'employment' were revoked in 1932.'' On the night of the accident there was to be a public celebration on the beach, and petitioner as such volunteer fireman was directed by the fire chief to drive the floodlight truck to the scene of the celebration, and to operate the same for the purpose of illuminating the beach, the light generated thereby being sufficient, according to the testimony, to ''light up a whole city block''. In order to keep the crowd at a safe distance from the lighting apparatus a rope was stretched around the truck; and while petitioner was operating the lights he tripped over a rope. In falling his right hand and wrist came in contact with the revolving cooling fan of the lighting apparatus, and were mangled and fractured so that thereafter he was permanently deprived of part of the usefulness of his right hand.

In view of the foregoing undisputed facts, we are unable to sustain the conclusion reached by the second referee that the beneficial provisions of said section 8 (g) are not available to petitioner. His conclusion is based mainly on certain testimony given to the effect that the maintenance man of the fire alarm system was deemed to be a member of the paid fire department. Respondents contend, therefore, that such being the case, petitioner's case was removed from the operation of said section 8 (g) of the Workmen's Compensation Act. The evidence establishes without conflict, however, that

petitioner's duties as maintenance man of the fire alarm system were entirely separate and distinct from those he was called upon to perform as a volunteer fireman; therefore, since the undisputed facts show that he was injured while performing a duty imposed on him as a volunteer fireman, he is doubtless entitled to be compensated for his injuries accordingly.

 Nor does the fact that petitioner when injured was not actually engaged in fighting a fire deprive him as a volunteer fireman of the benefits of said section 8 (g) of said act. In this regard it will suffice to say that it is a matter of common knowledge that firemen as such are often called upon to render public service where life or property is being jeopardized or endangered by causes other than fire; or where the safety of individuals, singly or collectively, require the protection of fire fighting equipment; and manifestly while thus engaged, under the direction of a superior officer, a fireman does not lose status as such. Here, as shown, petitioner as a volunteer fireman was injured while operating fire fighting equipment under the direction of the fire chief, in the interests of safety of those attending a public celebration. He is entitled, therefore, to the benefits extended to volunteer firemen by the provisions of said section 8 (g) of the Workmen's Compensation Act.

The award is annulled and the case remanded for further proceedings not inconsistent herewith.

Tyler, P. J., and Cashin, J., concurred.